### KENTON GAS & ELECTRIC CO. v. JACOB ORWICK.

1. OIL AND GAS LEASE IS OF PRODUCTIVE LAND ONLY.

A lease for oil and gas purposes, providing that "if gas only is found second party agrees to pay $100 in advance each year for the product of each well while the same is being used off the premises" is a lease of productive territory only. If the first well drilled is productive, there is an implied agreement upon the part of the lessee to drill other and a sufficient number of wells to develop the whole territory, but if the first well is unproductive, the lessee is not required to drill a second well or pay rental for any well.

2. SUPPLEMENTAL CONTRACT REVIVING ORIGINAL LEASE.

Where lessee, after the lease in question had become void by failure to drill a well within the time specified, paid the rental and agreed to immediately drill a well, and within six months to drill a second one, such contract is not an independent agreement to drill the wells, but is supplemental and should be construed with the original lease. The lessee's duties and liabilities are, therefore, to be determined by the rules above stated.

Gas and Electric Co. v. Orwick.

Heard on Error.

*F. C. Dougherty* and *J. E. Betts*, for plaintiff.

*John F. Rankin*, for defendant.

Day, J.

The action in the court of common pleas was by Jacob Orwick against the Kenton Gas & Electric Company to recover $200 on two causes of action for rent of gas lands as per contract and supplemental contract between the parties. By an answer the contracts are conceded, but liability is denied, on the ground that the farm of Orwick was nonproductive of gas; so much so, that no rental became or was due under the terms of the two contracts. No reply was made to this answer, so that the averment of non-productive gas land is not put in issue, but is substantially admitted. The issues joined were tried to the court, a jury trial being waived by the parties, and resulted in a finding for plaintiff on the second cause of action for $100 and interest. A motion to set aside the finding and for a new trial was overruled by the court, which gave judgment on the finding for $105.25. A bill of exceptions, containing all the evidence, was secured, and the Gas and Electric Company prosecutes error and seeks a reversal of the judgment because of prejudicial errors said to be apparent on the face of the record.

It is assigned as error:

First: That the court erred in the admission of evidence.

Second: The finding is not sustained by sufficient evidence and is against the weight of the evidence.

There was no objection made to any offered evidence; no ruling was made and no exception was taken to any ruling of the court as to the admissibility of evidence, and no exception was noted in the margin of the bill of exceptions, and we conclude the criticism that the court erred in its rulings on the admission of evidence, was inserted solely for quantity, and to make the petition in error look as formidable as possible.

The only error assigned, therefore, of substance, is the one that the finding and judgment is contrary to the weight of the evidence and is not sustained by sufficient evidence. There is scarcely any conflict in the evidence. None at all, in fact, as to the oral testimony, for there was but one witness put on the stand, and that was Mr. Orwick himself; and the whole case depended upon the reasonable and proper interpretation and construction of the original contract of lease and the supplemental contract made on August 2, 1898, in connection with the conceded facts stated in the answer, that Orwick's farm was non-productive gas land. It seems the lower court construed the supplemental contract to be an absolute agreement by the gas and electric company to drill a second well and pay rent therefor, without reference to the question as to whether the land was productive of gas or not, or whether gas was obtained or not, in sufficient volume to be used off the premises. If this construction of the lease is right, the finding and judgment is right; if not, it is not. So the whole case hinges and turns on the reasonable and proper construction of the original contract of lease and the supplement thereto.

The original lease provided: "If gas only is found, second party agrees to pay $100 in advance each year for the product of each well while the same is being used off the premises," etc. A well was to be completed in ten months from the date of the lease, and upon failure the

grant was to become null and void, unless upon "payment of $1.00 per acre in advance for each year thereafter such completion was delayed." The date of the lease was September 9, 1896. The number of acres leased was ninety, and the life of the lease could be extended one year by the payment of $90.00 in lieu of the completion of a well. If the first well proved a good one and yielded gas that could be used off the premises, there was an implied contract to make a second well and a sufficient number of wells to reasonably develop the whole land, ninety acres. There is no reasonable inference of obligation to drill additional wells unless the land proved to be productive of gas that could be utilized off the premises; in short, the lease was of productive oil or gas lands, and not of unproductive lands; and if the lands in question proved not to be oil or gas land, there was nothing in the contract or lease, that would require the lessee to drill a second well or pay rent for any well. No well, so the evidence is, was completed in ten months from the date of the lease, which would be July, 1897, and at that time the term of the lease was continued, by payment of $90.00 rent, $1.00 per acre, to July, 1898. In July, 1898, still no well was completed, and on August 2, 1898, the supplemental contract was made as follows:

" We have this day paid to Jacob Orwick $90.00 which is received as rental upon the lease for one year from July 9, 1898, and we have paid same $100, which is received as rental for first well upon said land, which is to be drilled as soon as it can be done, and it is agreed that the rental shall date from this date, and we do further agree that we will put the second well down within six months from the completion of the first well or pay rental from that date for the second well."

Signed the Kenton Gas & Electric Company, per Thos. Espy, President.

To ascertain the intention of the parties to this contract it is necessary to consider the original lease and the supplemental contract together, keeping in mind the purpose of the lease, and the conceded fact that the ninety acres was not gas-producing land. The original lease was not abrogated by the supplement, but was kept alive by it and the term extended for one year from July, 1898. By the terms of the lease it became void in July, 1898, for the want of a completed gas well; or the payment of $90.00 rent; and it appears the sole purpose of the supplement was to relieve the lease from the forfeiture that might be claimed by the lessor because of a non-completed gas well or the payment of rent; so the supplement provided that rent for a gas well was to be paid, and to date from July 9, 1898; and the well was to be completed as soon as it could be; it was treated as a completed well from July, when in fact a well was not completed. A completed well at that date was a fiction agreed upon for the purpose of saving the life of the lease, with its original terms and conditions and provisions in force. " The second well," mentioned in the supplement, was the second well impliedly required to be drilled by the terms of the original lease; and was not a new and independent contract, absolutely requiring a second well, without regard to the developments made by the first well, as to whether or not the land was gas land. It was spoken of as "the second well," and undoubtedly referred to the original lease and the implied agreement therein to make a second well on condition, clearly understood, that the first well produced gas that could be used off the premises. If this construction is reasonable and correct, then the conceded fact that the first well was a failure, and the farm non-productive gas land, would defeat the plain-

Gas and Electric Co. v. Orwick.

tiff's right to claim rental for the second well. If the land was not gas-bearing and gas-producing, there was no requirement on the gas and electric company to make a second well at all, or, if made and did not yield gas to be used off the premises, there was no requirement in the lease or leases that it pay rental therefor at all.

A majority of the court holds that the construction given the leases by the lower courts was not warranted; and that the undisputed evidence was to the effect that the plaintiff, Orwick, was not entitled to a finding and judgment against the defendant company. The finding and judgment is against the evidence, and is not supported by the evidence. The motion to set aside the finding is sustained; the judgment is reversed, the finding is set aside, and this court giving the judgment the common pleas should have given, gives judgment for the plaintiff in error that it go hence without day and recover its costs.

Norris, J., concurs.

Price, C. J., dissents.